# EXHIBIT  F

LEXSEE 2000 US DIST LEXIS 15401

**SAM M. CHUDNOVSKY, Plaintiff, - against - PRUDENTIAL SECURITIES INC., Defendant.**

**98 CIV. 7753 (SAS)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2000 U.S. Dist. LEXIS 15401*

**October 19, 2000, Decided
October 23, 2000, Filed**

**DISPOSITION:**    [*1]  PSI's motion granted and case dismissed with prejudice.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** In plaintiff's suit for failure to hire, in violation of Title VII of the Civil Rights Act of 1964, *42 U.S.C.S. § 2000e et seq.*, the Age Discrimination in Employment Act, *29 U.S.C.S. § 621 et seq.*, and state and local law, defendant moved to dismiss under *Fed. R. Civ. P. 56, 12(b)(1), (c)*.

**OVERVIEW:** Plaintiff unsuccessfully interviewed for employment with defendant. Plaintiff sued, alleging national origin and age discrimination under Title VII of the Civil Rights Act of 1964, *42 U.S.C.S. § 2000e et seq.*, the Age Discrimination in Employment Act, *29 U.S.C.S. § 621 et seq.*, and state and local law. The court granted defendant's motion to dismiss all claims. There was no subject matter jurisdiction over the state and local law claims, as plaintiff elected to file a state agency complaint. Plaintiff's disparate impact claim was not raised administratively, and he produced no evidence, statistical or otherwise, to support his claim. The disparate treatment claims based on age and national origin were not supported by sufficient evidence, and defendant showed that, during relevant time periods, it hired three others of plaintiff's national origin and individuals over the age of 40.

**OUTCOME:** Defendant's motion was granted and the case was dismissed with prejudice. Age and national origin claims of discrimination for failure to hire were dismissed. Defendant hired persons over 40 years of age and of plaintiff's national origin. Court lacked jurisdiction over state and local claims.

**LexisNexis(R) Headnotes**

*Civil Procedure > Discovery > Methods > General Overview*
*Civil Procedure > Summary Judgment > Standards > Legal Entitlement*
*Civil Procedure > Summary Judgment > Standards > Materiality*
[HN1] *Fed. R. Civ. P. 56(c)* provides for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Genuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, while materiality runs to whether the dispute matters, that is, whether it concerns facts that can affect the outcome under the applicable substantive law.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Movants*
*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Nonmovants*
*Civil Procedure > Summary Judgment > Standards > Genuine Disputes*
[HN2] In assessing the record to determine whether, in considering a motion for summary judgment, genuine issues of material fact exist, courts must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. The moving party bears the initial burden of showing an absence of genuine issues of material fact. If the moving party meets its initial burden, the

non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts. The non-moving party must produce specific facts indicating that a genuine factual issue exists.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*
[HN3] A motion to dismiss under *Fed. R. Civ. P. 12(c)* should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. In deciding such a motion, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's factual allegations as true. Similarly, in considering a motion to dismiss for lack of subject matter jurisdiction, pursuant to *Fed. R. Civ. P. 12(b)(1)*, a court must accept as true all material factual allegations in the complaint. However, argumentative inferences favorable to the party assessing jurisdiction should not be drawn.

*Civil Procedure > Parties > Self-Representation > Pleading Standards*
[HN4] Where a plaintiff appears pro se, a court must read the pleadings liberally and interpret them to raise the strongest arguments that they suggest. Nevertheless, appearing pro se does not relieve plaintiff from the normal rules of pleading and summary judgment.

*Administrative Law > Separation of Powers > Jurisdiction*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
*Civil Rights Law > General Overview*
[HN5] *N.Y. Exec. Law § 297(9)* (McKinney 2000) requires that any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction unless such person had filed a complaint under the statute. This law deprives federal courts of subject matter jurisdiction where a plaintiff previously elected to proceed in an administrative forum. The election required by the statute to proceed either judicially or administratively is strictly enforced.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
*Civil Rights Law > General Overview*
*Governments > Local Governments > Administrative Boards*

[HN6] Under New York City, N.Y., Administrative Code § 8-502(a), any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of competent jurisdiction, unless such person has filed a complaint with the New York state division of human rights with respect to such alleged unlawful discriminatory practice. The election of remedies provision of the New York City, N.Y., Administrative Code should be interpreted in the same manner as the election of remedies provision under N.Y. Exec. Law.

*Civil Procedure > Jurisdiction > General Overview*
*Civil Rights Law > General Overview*
*Criminal Law & Procedure > Jurisdiction & Venue > General Overview*
[HN7] In applying *N.Y. Exec. Law § 297(9)* (McKinney 2000), the particular legal theory asserted in an administrative charge is irrelevant to a court's determination of subject matter jurisdiction. Rather, the relevant inquiry is whether the facts alleged in the administrative charge are the same as those alleged in the federal court lawsuit.

*Administrative Law > Agency Adjudication > Alternative Dispute Resolution*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
*Civil Rights Law > General Overview*
[HN8] A federal district court only has jurisdiction to hear discrimination claims that either are included in the administrative complaint or are reasonably related to that alleged in the administrative complaint. Claims not raised in the charge are reasonably related if the conduct complained of would fall within the scope of an administrative investigation which can reasonably be expected to grow out of the charge of discrimination.

*Labor & Employment Law > Discrimination > Disparate Impact > Employment Practices > Selection Procedures > Neutral Factors*
*Labor & Employment Law > Discrimination > Disparate Impact > Proof > Statistical Evidence*
*Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Statistical Evidence*
[HN9] Title VII of the Civil Rights Act of 1964, *42 U.S.C.S. § 2000e et seq.*, prohibits not only overt and intentional discrimination, but also discrimination resulting from practices that are facially neutral but have "disparate impact," that is, significant adverse effects on protected groups. To establish a prima facie case of discrimination under a disparate impact theory, the plaintiff must identify a specific employment practice and provide

evidence sufficient to raise an inference that the identified employment practice causes significant adverse effects on a protected group. In order to prove causation, the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group.

*Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burden Shifting*
*Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burdens of Proof*
*Labor & Employment Law > Discrimination > National Origin Discrimination > Employment Practices > Failures to Hire*
[HN10] When raising a claim of disparate treatment in failure to hire, a plaintiff must make a prima facie showing of: (1) membership in a protected class; (2) qualification for the position; (3) an adverse employment action; and (4) circumstances giving rise to an inference of discrimination. Once the plaintiff's prima facie burden is met, the defendant then has the burden of articulating a legitimate, non-discriminatory reason for its failure to hire the plaintiff. If the defendant proffers such a reason, the initial presumption of unlawful discrimination vanishes. For the case to continue, the plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action.

*Labor & Employment Law > Discrimination > National Origin Discrimination > Coverage & Definitions*
[HN11] In considering a claim of employment discrimination based on national origin, statements and questions acknowledging a plaintiff's national origin and background do not support an inference of discriminatory animus. Statements that merely acknowledge a person's membership in a protected class under Title VII of the Civil Rights Act of 1964, *42 U.S.C.S. § 2000e et seq.*, fail to demonstrate bias. A question regarding whether a plaintiff has a particular national origin is simply a question, not a statement of belief or opinion, and is therefore not indicative of a discriminatory animus.

*Labor & Employment Law > Discrimination > Disparate Treatment > General Overview*
*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview*
[HN12] An individual's impermissible bias may constitute a violation of Title VII of the Civil Rights Act of 1964, *42 U.S.C.S. § 2000e et seq.*, if he played "a meaningful role" in the adverse employment action.

*Labor & Employment Law > Discrimination > Age Discrimination > Coverage & Definitions > General Overview*
[HN13] Neither a request to state an employment applicant's age on an application form nor discussion of the applicant's age in an employment interview supports an inference of discriminatory animus based on age unless there is evidence of an illegitimate bias or stereotype.

*Labor & Employment Law > Discrimination > Age Discrimination > Coverage & Definitions > General Overview*
[HN14] See *29 C.F.R. § 1625.5.*

*Civil Procedure > Summary Judgment > Motions for Summary Judgment > General Overview*
*Civil Procedure > Summary Judgment > Standards > General Overview*
[HN15] When a summary judgment motion is made, the time has come to put up or shut up. Accordingly, unsupported allegations do not create a material issue of fact.

*Labor & Employment Law > Discrimination > Disparate Treatment > General Overview*
[HN16] In an employment discrimination case, if the plaintiff creates only a weak issue of fact as to whether the employer's reason was untrue, and there is abundant and uncontroverted independent evidence that no discrimination occurred, the defendant is entitled to summary judgment.

*Contracts Law > Types of Contracts > Implied-in-Law Contracts*
[HN17] Under New York law, unjust enrichment results when a person retains a benefit which, under the circumstances of the transfer and considering the relationship of the parties, it would be inequitable to retain. A claim of unjust enrichment must fail when the defendant has not benefitted from the plaintiff's acts.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > Leave of Court*
[HN18] Under *Fed. R. Civ. P. 15(a)*, leave to amend shall be freely granted when justice so requires. However, the decision whether to grant leave to amend rests within the sound discretion of the district court. "Futility"

provides a solid ground on which to deny leave to amend. Thus, where the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied. Moreover, leave to amend is particularly disfavored after discovery is completed.

**COUNSEL:** Sam M. Chudnovsky, Plaintiff, Pro se, Rego Park, New York.

For Defendant: Michael T. Mervis, Esq., Jeffrey A. Goldstein, Esq., Proskauer Rose LLP, New York, New York.

**JUDGES:** Shira A. Scheindlin, U.S.D.J.

**OPINION BY:** Shira A. Scheindlin

**OPINION**

*OPINION AND ORDER*

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

Plaintiff Sam M. Chudnovsky, appearing pro se, brings this action under Title VII of the Civil Rights Act, *42 U.S.C. § 2000e et seq.*, the Age Discrimination in Employment Act ("ADEA"), *29 U.S.C. § 621 et seq.*, the New York State Human Rights Law, Exec. Law *§ 296 et seq.* ("State Executive Law"), and the New York City Human Rights Law, N.Y.C. Admin. Code, § 8-107 et seq. ("City Administrative Code"). Plaintiff is suing Prudential Securities Inc. ("PSI") for rejecting his application to be a Financial Advisor in Training ("FAIT"), asserting claims of disparate impact and disparate treatment discrimination, wrongful denial of employment and unjust enrichment. PSI now moves, pursuant to *Federal Rules of Civil Procedure 56, 12(b)(1)* and *12(c)*, to dismiss all of plaintiff's claims. [*2] For the reasons that follow, defendant's motion is granted in its entirety.

**I. Legal Standard**

[HN1] *Rule 56* provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c).* "Genuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, [while] materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." *Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 5 (2d Cir. 1999)* (internal quotations and citations omitted).

[HN2] In assessing the record to determine whether genuine issues of material fact exist, courts must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).* The moving party bears the initial burden of showing an absence of genuine issues of material fact. *See* [*3] *Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997).* If the moving party meets its initial burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986).* The non-moving party "must produce specific facts indicating that a genuine factual issue exists." *Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998)* (internal quotations omitted). [1]

1   The Second Circuit recently noted that "summary judgment is appropriate even in discrimination cases, for . . . 'the salutary purposes of summary judgment -- avoiding protracted, expensive and harassing trials -- apply no less to discrimination cases than to . . . other areas of litigation.'" *Weinstock, 224 F.3d at 41* (quoting *Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985)).*

[HN3] A motion to dismiss under *Rule 12(c)* [*4] should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994).* In deciding such a motion, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's factual allegations as true. *See id.* Similarly, in considering a motion to dismiss for lack of subject matter jurisdiction, pursuant to *Rule 12(b)(1)*, a court must accept as true all material factual allegations in the complaint. *See Atlantic Mut. Ins. Co. v. Balfour MacLaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992).* "However, argumentative inferences favorable to the party assessing jurisdiction should not be drawn." *Id.*

[HN4] Where a plaintiff appears pro se, a court must "read the pleadings . . . liberally and interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999)* (internal quotations omitted). Nevertheless, appearing pro se does not relieve plaintiff from the normal rules of pleading and summary judgment. *See Fesce v. Guardsman Elevator Co., 1998 U.S. Dist. LEXIS 3878,* No. 96 Civ. 6793, 1998 WL 142350, [*5] at *4 (S.D.N.Y. Mar. 26, 1998) (cases cited therein), *aff'd, 173 F.3d 844 (2d Cir. 1999).*

**II. Background**

## A. Factual Background

### 1. The FAIT Interviews

In August 1996, plaintiff, a forty-six year old Russian immigrant, applied to PSI for the position of a FAIT. *See* Second Amended Complaint ("SAC") at 6. The FAIT program is a rigorous one with a high attrition rate. On average, only twenty to twenty-five percent of the FAITs graduate from the four-year training program. *See* Defendant's Statement Pursuant to Local Rule 56.1 ("Def. 56.1") P 11. At the time he applied, plaintiff had been employed for approximately fifteen weeks as a sales representative by Prudential Insurance Co. ("PIC"), PSI's parent company. *See* SAC at 6. Prior to that, plaintiff was employed as a mechanical engineer for approximately twenty-five years. *See id. at 7.*

Plaintiff's first interview for the FAIT position was held at PSI's Madison Avenue Branch with its Branch Manager, Robert Limmer. *See* Def. 56.1. P 13. During the interview, plaintiff informed Limmer that no one, including himself, was succeeding at PIC. *See* Deposition of Sam M. Chudnovsky [*6] ("Chudnovsky Dep."), Ex. A. to 5/26/00 Declaration of Michael T. Mervis, counsel for defendant, in Support of Dismissal ("Mervis Decl."), at 204-05. Plaintiff also informed Limmer that he wanted to leave PIC because he had not understood that he would be unable to sell securities. *See* Def. 56. 1 P 16. As part of the interview process, Limmer asked plaintiff to draft a business plan outlining what plaintiff's goals and strategies would be if he were hired as a FAIT. *See id.* PP 18, 19. Limmer found that plaintiff's handwritten business plan lacked focus, contained numerous grammatical and spelling errors and referred to prospective clients by their first names. *See id.* P 20. This signaled to Limmer that plaintiff lacked the necessary dedication and was not an effective communicator. *See id.* P 21. Limmer also observed that plaintiff exhibited poor interpersonal skills. *See id.* P 22. Each of these reasons provided Limmer an independent basis for rejecting plaintiff's FAIT application. *See id.* P 24. Accordingly, Limmer decided that plaintiff should not continue in the Madison Avenue Branch's [*7] FAIT application process. *See id.* P 23.

Notwithstanding Limmer's decision to terminate plaintiff's FAIT application, PSI granted plaintiff an interview for a FAIT position at the Broadway Branch, where plaintiff interviewed with the Branch Manager, Abe Borenstein. *See id.* P 26. At this interview plaintiff admitted that he was having limited success at PIC and was unable to offer a cogent explanation as to why he wanted to leave PIC after such a short tenure. *See id.* PP 27, 30. Like Limmer, Borenstein asked plaintiff to draft a business plan reflecting plaintiff's strategies for succeed-

ing as a FAIT. *See id. P 31.* In Borenstein's experience, applicants genuinely interested in becoming a FAIT submit their business plan within one or two days of the request. *See id. P 33.* Plaintiff submitted his business plan approximately one week later. *See id. P 34.* For each of these reasons, Borenstein decided that plaintiff should not be permitted to continue with the FAIT application process at the Broadway Branch. *See id. PP 36, 37.*

### 2. Plaintiff's Allegations of Discrimination

[*8] Plaintiff maintains that "PSI created wealth and money requirements that have the effect of denying employment for [plaintiff]." SAC at 7. Limmer asked plaintiff "embarrassing and humiliating questions related to [his] *financial and social statute* [sic]." *Id.* Specifically, plaintiff was asked "to name ten (10) milliners [sic] who will recognize you by name," "how reach [sic] [is] the richest person who will recognize you by name," and "to price the most expensive gift you ever received." *Id. at 8.* Additionally, plaintiff was sent to another Russian-speaking employee, Yuriy Roizman, who informed him that he needed to convince a friend or relative to open an initial account of approximately $ 200,000. *See id.*

Plaintiff also contends that during the Limmer and Borenstein interviews, he was asked various questions demonstrating defendant's discriminatory animus toward persons of Russian national origin and persons over the age of forty. Initially, plaintiff completed an application form that requested his age and national origin. *See id. at 8, 9.* Plaintiff maintains that Limmer asked plaintiff his national origin and then informed him that the Russian [*9] community would be "his natural market." *Id. at 8.* Moreover, during his second interview, Borenstein forced plaintiff "against his will, to talk about Russia, [the] Russian government system, [and] social life in Russia." *Id. at 9.* Plaintiff was also "required to speak [the] Russian Language" with Roizman. *See id.* Finally, plaintiff contends that both Borenstein and Roizman discussed plaintiff's age with him. *See id.*

## B. Procedural Background

On December 24, 1996, plaintiff filed a charge of discrimination with the New York State Division of Human Rights ("NYSDHR") alleging that PSI has "an unlawful discriminatory practice relating to Employment in violation of Article 15 of the Executive Law of the State of New York . . . because of Age and National Origin." 12/24/96 Charge to NYSDHR ("NYSDHR Charge"), Ex. A to SAC, at 1. On August 31, 1998, the NYSDHR dismissed plaintiff's charge, finding no probable cause to support plaintiff's allegations of discrimination. *See* Determination and Order After Investigation of

NYSDHR ("NYSDHR Determination"), Ex. C to SAC, at 1. In a letter dated September 17, 1998, plaintiff wrote to the Equal Employment Opportunity [*10] Commission ("EEOC") to seek review of the NYSDHR Determination. See Plaintiff's Letter to EEOC District Office ("EEOC Letter"), Ex. D to SAC, at 1. The EEOC dismissed plaintiff's charge of discrimination, adopting the findings of the state agency. See EEOC Dismissal and Notice of Rights, Ex. E to SAC, at 1. After receiving his right to sue letter, plaintiff commenced this action on October 30, 1998. He alleged, inter alia, discrimination on the grounds of race, religion, age and national origin. See Chudnovsky v. Prudential Securities, Inc., 1999 U.S. Dist. LEXIS 144, No. 98 Civ. 7753, 1999 WL 13042, at *1 (S.D.N.Y. Jan. 13, 1999) ("Chudnovsky I").

On December 29, 1998, this Court granted PSI's motion to dismiss plaintiff's claims of discrimination based on race and religion because of plaintiff's failure to include those grounds in his administrative complaint. See id. at *2. On August 13, 1999, plaintiff filed an amended complaint, and on October 13, 1999, plaintiff filed the SAC.

The SAC asserts four claims against PSI. The first two claims allege discrimination in violation of federal law, the State Executive Law and the City Administrative Code. In Claim I, plaintiff contends [*11] that PSI created wealth requirements that have a disparate impact on persons of Russian national origin. [2] See SAC at 7. Plaintiff adduces PSI's supposed wealth requirements from the questions he was asked concerning his contacts with people of high net worth and Roizman's statement informing plaintiff that he needed a friend or relative to open a $ 200,000 account at PSI. See id. at 7-8. Claim II alleges that plaintiff was subjected to disparate treatment based on his age and national origin. See id. at 8-9. In Claim III, plaintiff alleges a violation of a common law tort of "wrongful denial of employment". Id. at 10. Plaintiff maintains that he was fully qualified for the FAIT position but that he was disqualified because of his age and financial status. See id. Claim IV alleges that plaintiff was denied "the fruits of [his] labor" and, under the doctrine of unjust enrichment, plaintiff "demand[s] full restitution for the value of the items and time lost for preparation, typing, [and] delivering of business plans." Id. at 11.

2   In the SAC, plaintiff merely alleges that the employment practice in question had an adverse impact on plaintiff, as opposed to a particular protected class. See SAC at 7 ("[PSI] created wealth and money requirements that have the effect of denying employment for [Plaintiff]."). In his deposition, plaintiff clarified that the wealth requirements have a disparate impact on individu-

als of Russian national origin. See Chudnovsky Dep., Ex. A to Mervis Decl., at 524. Interpreting the pleadings of a pro se plaintiff liberally, see McPherson, 174 F.3d at 280, the protected class is individuals of Russian national origin.

[*12] III. Discussion

A. Plaintiff's Claims under the State Executive Law and the City Administrative Code

PSI first argues that these claims must be dismissed pursuant to Rule 12(b)(1) because this Court lacks subject matter jurisdiction over plaintiff's State and City claims. See Defendant's Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Fed. R. Civ. P. 56, 12(b)(1) and 12(c) ("Def. Mem.") at 10-11. [HN5] Section 297(9) of the State Executive Law requires that "any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction . . . unless such person had filed a complaint hereunder." N.Y. Exec. Law § 297(9) (McKinney 2000) (emphasis added). This law deprives federal courts of subject matter jurisdiction where a plaintiff previously elected to proceed in an administrative forum. See Moodie v. Federal Reserve Bank of New York, 58 F.3d 879, 882-83 (2d Cir. 1995) (upholding dismissal of plaintiff's state law claims because plaintiff had elected to seek a state administrative remedy); McNulty v. New York City Dep't of Fin., 45 F. Supp. 2d 296, 303 (S.D.N.Y. 1999) [*13] (same). "'The election required by the statute to proceed either judicially or administratively is strictly enforced.'" Wiley v. Citibank, N.A., 2000 U.S. Dist. LEXIS 799, *7, No. 98 Civ. 1139, 2000 WL 122148, at *2 (S.D.N.Y. Feb 1, 2000) (alteration in original) (quoting Scott v. Carter-Wallace, 147 A.D.2d 33, 541 N.Y.S.2d 780, 781 (1st Dep't 1989)).

Similarly, [HN6] under the City Administrative Code, "any person claiming to be aggrieved by an unlawful discriminatory practice . . . shall have a cause of action in any court of competent jurisdiction . . . unless such person has filed a complaint . . . with the [New York] state division of human rights with respect to such alleged unlawful discriminatory practice. . . ." N.Y.C. Admin. Code § 8-502(a) (emphasis added). The election of remedies provision of the City Administrative Code should be interpreted in the same manner as the election of remedies provision under the State Executive Law. See Dodson v. New York Times Co., 1998 U.S. Dist. LEXIS 15764, *15-16 n.3, No. 97 Civ. 3838, 1998 WL 702277, at *5 n. 3 (S.D.N.Y. Oct. 7, 1998).

On December 24, 1996, Chudnovsky filed a charge of discrimination with the NYSDHR alleging that he was discriminated [*14] against because of his age and na-

tional origin. Finding that it lacked probable cause, the NYSDHR dismissed plaintiff's charge. Plaintiff nonetheless argues that this Court has subject matter jurisdiction over his State and City claims because "plaintiff's complaint to [the] NYSDHR asserted only federal charges." *See* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to *Fed. R. Civ. P. 56, 12(b)(1)*, and *12(c)* ("Pl. Mem.") P 7.

Plaintiff's argument lacks merit. *Fir st*, plaintiff wrongly asserts that the charge to the NYSDHR did not raise a state claim. *See* NYSDHR Charge, Ex. A to SAC, at 1 (stating that the charge concerns "an unlawful discriminatory practice relating to Employment in violation of Article 15 of the Executive Law of the State of New York"). *Second*, [HN7] the particular legal theory asserted in the administrative charge is irrelevant to a court's determination of subject matter jurisdiction. Rather, the relevant inquiry is whether the facts alleged in the administrative charge are the same as those alleged in the federal court lawsuit. *See McNulty, 45 F. Supp. 2d at 303* [*15] (dismissing City law claims because they "arise from the exact same discriminatory practices" as the State law claims raised in the administrative charge). Because the plaintiff's NYSDHR charge arises from the same facts as those alleged here, this Court lacks subject matter jurisdiction over the State and City claims. Accordingly, pursuant to *Rule 12(b)(1)*, those claims are dismissed.

## B. Claim I: Disparate Impact

Defendant moves to dismiss plaintiff's claim of disparate impact discrimination on two grounds: (1) lack of subject matter jurisdiction because plaintiff failed to raise a disparate impact claim in his administrative charge; and (2) failure to provide any evidence that the alleged wealth requirements have a disparate impact on a protected class. [3]

    3   The lack of jurisdiction claim is brought under *Rule 12(b)(1)*, *see* Def. Mem. at 11-12, and the failure of proof claim under *Rule 56*, *see id. at 12-14.*

[HN8] "It is well settled that a district court only has jurisdiction to hear discrimination [*16] claims that either are included in the administrative complaint or are 'reasonably related' to that alleged in the administrative complaint." *Chudnovsky I*, 1999 WL 13042, at *1 (quoting *Butts v. City of New York Dep't of Hous., 990 F.2d 1397, 1401 (2d Cir. 1993)*). Claims not raised in the charge are reasonably related if the conduct complained of would fall within the scope of an administrative investigation "which can reasonably be expected to grow out of the charge of discrimination." *Butts, 990 F.2d at 1402.*

The purpose of this exhaustion requirement is to encourage settlement of discrimination disputes through conciliation and voluntary compliance after full investigation of the charges by the administrative agency. *See id. at 1403.*

Nothing in plaintiff's administrative charge suggests that plaintiff was asserting a claim of disparate impact discrimination. Even plaintiff's letter to the EEOC fails to mention any disparate impact caused by defendant's supposed wealth requirements. *See* EEOC Letter, Ex. D to SAC, at 1. Nevertheless, plaintiff argues that the Court has subject matter jurisdiction over the disparate [*17] impact claim because, at a meeting with a NYSDHR investigator, plaintiff informed the investigator of PSI's questions regarding his wealth, questions which form the basis of the disparate impact claim. *See* Pl. Mem. P 37(a). As memorialized in a Chronology Events Report, plaintiff told the NYSDHR investigator that he "was asked a series of questions such as 'How many Millionaires do you know?', and 'what was the biggest gift that you ever received?'" *See* Chronology Events Report, Ex. B to SAC, at 4. However, plaintiff's claim that he was asked about his financial connections cannot reasonably be interpreted to assert a disparate impact claim based on national origin. *See id.* ("Mr. Chudnovsky feels that PSI are [sic] running a scam by interviewing people for the Financial Advisor position, when [PSI] really want[s] the clients that [an applicant] might bring to the job."). Plaintiff's complaint is that the questions relating to wealth were a "scam", not that the questions have a disparate impact on any protected group. Consequently, pursuant to *Rule 12(b)(1)*, this Court lacks jurisdiction to hear plaintiff's disparate impact claim.

Alternatively, plaintiff's disparate [*18] impact claim must be dismissed pursuant to *Rule 56*. [HN9] "Title VII prohibits not only overt and intentional discrimination, but also discrimination resulting from practices that are facially neutral but have 'disparate impact,' i.e., significant adverse effects on protected groups." *Bridgeport Guardians, Inc. v. City of Bridgeport, 933 F.2d 1140, 1146 (2d Cir. 1991).* To establish a prima facie case of discrimination under a disparate impact theory, the plaintiff must identify a specific employment practice and provide evidence sufficient to raise an inference that the identified employment practice causes significant adverse effects on a protected group. *See Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 994-95, 101 L. Ed. 2d 827, 108 S. Ct. 2777 (1988).* In order to prove causation, "the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." *Id. at 994.*

2000 U.S. Dist. LEXIS 15401, *

Plaintiff alleges that he was subjected to wealth requirements, such as naming ten millionaires and opening a $ 200,000 [*19] account, which have a disparate impact on Russians. *See supra* Part II.A.2. However, plaintiff has failed to produce any evidence, statistical or otherwise, to support this claim. Plaintiff admits that he has conducted no study concerning the financial condition of Russian immigrants in the United States, *see* Chudnovsky Dep., Ex. A. to Mervis Decl., at 530, and that he has "no bad facts" to support his disparate impact claim, *id.* at 527. Rather, plaintiff relies on the conclusory assertion that it "is common knowledge" that a Russian immigrant arrives in the United States poor. *Id.* at 524. Such a conclusory assertion is insufficient to sustain a prima facie case of disparate impact discrimination. *See Trezza v. Hartford, Inc., 1998 U.S. Dist. LEXIS 20206,* No. 98 Civ. 2205, 1998 WL 912101, at *8 (S.D.N.Y. Dec. 30, 1998) (dismissing disparate impact claim where evidence merely raises a "conclusory assertion" of discrimination).

## C. Claim II: Disparate Treatment

Plaintiff also alleges that he was subjected to disparate treatment based on his age and national origin. Under the burden shifting provisions articulated in *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973),* [*20] [HN10] plaintiff must make a prima facie showing of: (1) membership in a protected class; (2) qualification for the position; (3) an adverse employment action; and (4) circumstances giving rise to an inference of discrimination. *See Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134* (2d Cir.) (applying test to claim of age discrimination), *cert. denied, 147 L. Ed. 2d 983, 120 S. Ct. 2718 (2000); Stern v. Trustees of Columbia Univ., 131 F.3d 305, 311-12 (2d Cir. 1997)* (applying test to claim of national origin discrimination). Once the plaintiff's prima facie burden is met, the defendant then has the burden of articulating a legitimate, nondiscriminatory reason for its failure to hire plaintiff. *See Weinstock, 224 F.3d at 42.* If the defendant proffers such a reason, the initial presumption of unlawful discrimination vanishes. "For the case to continue, the plaintiff must . . . 'produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendant] were false, and that more likely than not [discrimination] was the real reason [*21] for the [employment action].'" *Id.* (quoting *Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996)); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 L. Ed. 2d 105, 120 S. Ct. 2097, 2106 (2000).*

Assuming, arguendo, that plaintiff can establish a prima facie showing of disparate treatment, PSI has sustained its burden of establishing non-discriminatory rea-

sons for its refusal to hire Chudnovsky and plaintiff has proffered no evidence to demonstrate that the non-discriminatory reasons are pretextual. The independent reasons Limmer provided for rejecting plaintiff's application include: (1) plaintiff's admission that he was not succeeding at PIC; [4] (2) plaintiff's failure to understand that he could not sell securities when he took the position at PIC; (3) plaintiff's business plan was carelessly drafted and unprofessional; [5] and (4) plaintiff's poor interpersonal skills and inability to communicate effectively. Similarly, Borenstein rejected plaintiff for the FAIT position for each of the following independent reasons: (1) plaintiff's admission that he was not succeeding at PIC; (2) plaintiff's poor interpersonal skills; [*22] (3) plaintiff's failure to offer a sensible explanation for leaving PIC; and (4) plaintiff's delay in submitting the business plan.

> 4  As noted *supra* Part II.A.1, plaintiff contends that he told Limmer that everyone at PIC was having performance problems. This does not contradict Limmer's version because it still leads to the inference that plaintiff -- whether alone or along with others -- was not succeeding at PIC.

> 5  Plaintiff admitted that if he were to rank the business plan he submitted to Limmer between one and ten -- one being very bad and ten being excellent -- he would rank it a three. *See* Chudnovsky Dep., Ex. A to Mervis Decl., at 534.

### 1. National origin discrimination

With respect to his claim of disparate treatment based on national origin, plaintiff alleges that the following facts permit a rational fact finder to conclude that PSI discriminated against him: (1) the application form requested his national origin; (2) Limmer and Borenstein asked questions regarding his national [*23] origin; (3) plaintiff was told that the "Russian community will be your natural market"; (4) Borenstein forced plaintiff to discuss topics relating to Russia; and (5) plaintiff was required to speak Russian with a Russian-speaking employee.

[HN11] Statements and questions acknowledging plaintiff's national origin and background do not support an inference of discriminatory animus. *See Jalal v. Columbia Univ., 4 F. Supp. 2d 224, 236 (S.D.N.Y. 1998)* ("Statements that merely acknowledge a person's membership in a Title VII-protected class . . . fail to demonstrate bias."); *Fesce, 1998 WL 142350, at *9* ("[Defendant's] question regarding whether [plaintiff] is Puerto Rican . . . is simply a question, not a statement of belief or opinion, and is therefore not indicative of a discriminatory animus."). Nor are allegations that a PSI em-

ployee informed plaintiff that the Russian community will be his natural market and conversed with him in Russian indicative of discriminatory animus. Moreover, as noted by the NYSDHR, plaintiff's "assertion that he was denied employment by respondent because of his national origin is belied by the fact that three other individuals [*24] of Russian national origin were hired by [PSI] during the relevant time frame [and that] one of these individuals was hired one year prior to [defendant] rejecting [Chudnovsky]." NYSDHR Determination, Ex. C to SAC, at 1.

Plaintiff also relies on the notes of an interview between a former PSI employee, Phyllis Del Greco, and another PSI employee, Andy Freund, in which Del Greco wrote that Freund "feels Sam [Chudnovsky] isn't qualified . . . he's 'tired of all this garbage . . . we'd be better off not talking to minorities at all -- we wouldn't have this problem with non-minorities.'" Pl. Mem. P 40; Def. Mem. at 23 n.17. However, because plaintiff has not submitted any evidence that Freund was involved in the decision not to hire him, or that he shared his views with Limmer or Borenstein, this statement cannot sustain a finding that defendant's decision was motivated by discriminatory animus. See Bickerstaff v. Vassar College, 196 F.3d 435, 450 (2d Cir. 1999) (stating that [HN12] an individual's impermissible bias may constitute a Title VII violation if he played "a meaningful role" in the adverse employment action), cert. denied, 530 U.S. 1242, 147 L. Ed. 2d 960, 120 S. Ct. 2688 (2000); [*25] Fesce, 1998 WL 142350, at *10 (statement that "the only good Puerto Rican is a dead Puerto Rican" does not raise a material issue of fact because it was not made by a decision maker involved in plaintiff's termination).

## 2. Age discrimination

With respect to plaintiff's claim of disparate treatment on account of his age, plaintiff offers even less evidence of pretext. Plaintiff's prima facie case relies on the following allegations: (1) [HN13] the application form requested his age; and (2) plaintiff's age was discussed during his meetings with Borenstein and Roizman. However, neither allegation supports an inference of discriminatory animus unless there is evidence of an illegitimate bias or stereotype. [HN14] See 29 C.F.R. § 1625.5 ("A request on the part of an employer for information such as 'Date of Birth' or 'State Age' on an employment application form is not, in itself, a violation of the [ADEA]."); Criley v. Delta Air Lines, 119 F.3d 102, 105 (2d Cir. 1997) (affirming grant of summary judgment where defendant's remarks that made "reference to age" do not "reflect any age-based stereotype or belief that older [employees] are less competent [*26] than younger ones").

To bolster his claim of pretext, plaintiff also argues that (1) "PSI has an extremely bad record of hiring applicants of age 40 or over"; and (2) "Borenstein . . . had the worst record in employment discrimination - three (3) lawsuits for age discrimination during the years of 1994, 1995, and 1996." Pl. Mem. PP 1(a), 27(d). However, plaintiff's first allegation is completely unsubstantiated and contradicted by the NYSDHR Determination. See NYSDHR Determination, Ex. C to SAC, at 2 ("[PSI] hired individuals over the age of forty (40) before and after [plaintiff] was interviewed for the [FAIT] position . . . [and] the average age of all FAITs in both offices to where [sic] [plaintiff] was referred was 42.5 and 46.5."). Plaintiff's second allegation -- that three age discrimination suits were filed against the Broadway Branch -- is not evidence of discriminatory animus. [6] "The Court is aware of no case where generalized statistical evidence has been held sufficient to refute, for summary judgment purposes, a defendant's particularized evidentiary showing of a non-discriminatory explanation for a particular act complained of, in the absence of any [*27] other material, admissible evidence of discrimination." Robinson v. Metro-North Commuter R.R., 1998 U.S. Dist. LEXIS 373, *30-31, No. 94 Civ. 7374, 1998 WL 17742, at *9 (S.D.N.Y. Jan. 16, 1998) (internal citations omitted), aff'd, Caridad v. Metro-North Commuter R.R., 191 F.3d 283 (2d Cir. 1999), cert. denied, 529 U.S. 1107, 146 L. Ed. 2d 791, 120 S. Ct. 1959 (2000); see also Weinstock, 224 F.3d at 46 (statistical evidence of underrepresentation of women faculty members at university "is little but an unsupported hypothesis providing no foundation for the assertion that there was discrimination in [plaintiff's] tenure process").

6    To be precise, the exhibit on which plaintiff relies is a chart which mentions two claims of age discrimination against PSI's Broadway Branch, excluding Chudnovsky's claim. See Age and National Origin Discrimination "Complaints" Re PSI's NYC Branches (1994-1996) ("Discrimination Chart"), Ex. D to Pl. Mem., at 1. In addition, the Discrimination Chart does not indicate that there was an administrative or judicial finding in either case that the Broadway Branch discriminated on the basis of age. Nor is there any evidence that Borenstein was accused of wrongful conduct in connection with either of the complaints.

## [*28] 3. Conclusion

Plaintiff has primarily relied on his prima facie case to establish pretext. However, such a weak prima facie case cannot sustain a finding of pretext. See Stern, 131 F.3d at 312 ("If the plaintiff's evidence was barely sufficient to make out a prima facie case, it may not be suffi-

2000 U.S. Dist. LEXIS 15401, *

cient to establish discrimination after the defendant has proffered a neutral rationale."). Moreover, the additional evidence of pretext presented by plaintiff consists primarily of conclusory allegations, which cannot defeat a motion for summary judgment. *See Weinstock, 224 F.3d at 41* [HN15] ("When the [summary judgment] motion is made, . . . the time has come . . . to put up or shut up. Accordingly, unsupported allegations do not create a material issue of fact.") (internal quotations and citations omitted). [HN16] Because "the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there [is] abundant and uncontroverted independent evidence that no discrimination . . . occurred," *Reeves, 120 S. Ct. at 2109*, PSI is entitled to summary judgment.

## D. Claim III: Wrongful Denial of Employment

Claim III [*29] of the SAC for "wrongful denial of employment" essentially recasts plaintiff's discrimination claims as a common law tort claim. Plaintiff has failed to cite a single case -- nor has this Court found any -- that has recognized a tort of wrongful denial of employment. This is not surprising given that New York's Legislature has provided a statutory remedy covering plaintiff's allegations. *See N.Y. Exec. Law § 296* (McKinney 2000). Additionally, recognizing a common law tort of wrongful denial of employment would run counter to the directive of New York's highest court instructing courts to refrain from creating tort actions in the employment context. *See Murphy v. American Home Prods. Corp., 58 N.Y.2d 293, 300-301, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983)* ("Plaintiff urges . . . [this Court to] recognize the tort of abusive or wrongful discharge of an at-will employee. To do so would alter our long-settled rule that where an employment is for an indefinite term it is presumed to be a hiring at will. . . . We decline his invitation, being of the opinion that such a significant change in our law is best left to the Legislature."). Accordingly, plaintiff's wrongful [*30] denial of employment claim is dismissed pursuant to *Rule 12(c)*, for failure to state a claim.

## E. Claim IV: Unjust Enrichment

Plaintiff's last claim seeks restitution for the value of the business plans he prepared and the time spent preparing them. Plaintiff states that when Limmer asked him to write a business plan, plaintiff "assumed that it was a job offer and expected to be paid." SAC at 11.

[HN17] Under New York law, "unjust enrichment results when a person retains a benefit which, under the circumstances of the transfer and considering the relationship of the parties, it would be inequitable to retain."

*Counihan v. Allstate Ins. Co., 194 F.3d 357, 361 (2d Cir. 1999).* A claim of unjust enrichment must fail when the defendant has not benefitted from the plaintiff's acts. *See MacDraw, Inc. v. CIT Group Equip. Fin., Inc., 157 F.3d 956, 963 (2d Cir. 1998)* ("[A] plaintiff seeking an equitable recovery based on unjust enrichment must first show that a benefit was conferred upon the defendant. . . ."). The undisputed testimony is that no one at PSI has ever used plaintiff's business plans for any purpose. *See* Def. 56. *1 P 39*. Consequently, [*31] summary judgment is granted on plaintiff's unjust enrichment claim.

## IV. Leave to Amend

[HN18] Under *Federal Rule of Civil Procedure 15(a)*, "leave to amend shall be freely granted when justice so requires." However, the decision whether to grant leave to amend rests within the sound discretion of the district court. *See Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990).* The Second Circuit has held that "futility" provides a solid ground on which to deny leave to amend. *See Marchi v. Board of Coop. Educ. Servs. of Albany, 173 F.3d 469, 478 (2d Cir.), cert. denied, 528 U.S. 869, 145 L. Ed. 2d 143, 120 S. Ct. 169 (1999).* Thus, "where the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." *Hayden v. County of Nassau, 180 F.3d 42, 53 (2d Cir. 1999).* Moreover, leave to amend is particularly disfavored after discovery is completed. *See Boyle v. Stephens Inc., 1998 U.S. Dist. LEXIS 15215*, No. 97 Civ. 1351, 1998 WL 690816, at *7 (S.D.N.Y. Sept. 29, 1998).

Plaintiff has already amended his complaint twice. Defendant [*32] has spent considerable resources in attacking three versions of the complaint. Granting plaintiff leave to amend at this late juncture would be unfair to defendant and this Court. In addition, all of plaintiff's claims were dismissed for deficiencies which cannot be cured by amendment.

## V. Conclusion

For the foregoing reasons, PSI's motion is granted in its entirety and the case is dismissed with prejudice. The Clerk is directed to close this case.

SO ORDERED:

Shira A. Scheindlin

U.S.D.J.

Dated: New York, New York

October 19, 2000